CASE 62.—ACTION BY WARDIE L. PATRICK, BY NEXT FRIEND, AGAINST THE CHESAPEAKE & OHIO RAILWAY COMPANY FOR PERSONAL INJURIES.— November 23, 1909.

## Chesapeake & Ohio Ry. Co. v. Patrick
## Same v. Picklesimer's Adm'r

Appeal from Boyd Circuit Court.

S. G. KINNER, Circuit Judge.

Judgment for plaintiffs, defendant appeals.—Affirmed.

1. Railroads—Crossing Accident—Questions for Jury—Evidence. —In an action for injuries in a crossing accident, whether plaintiff was negligent in standing on one track while a freight train was passing on another held, under the evidence, for the jury.

2 Railroads—Accidents at Crossings—Duty to Stop Before Crossing.—One having a right to cross a railroad track need not stop to look or listen, before crossing in order to discover whether a train is approaching.

3. Railroads—Crossing Accident—Instructions.—Where, in an action for injuries in a crossing accident, the whistle of the engine was not sounded, so that plaintiff could hear it, until the engine was within a few feet of, and in fact on, plaintiff, an instruction confining the signals to the ringing of the bell, which evidence showed was rung long before the engine struck plaintiff, was proper.

4. Trial—Cure by Other Instruction.—Error in an instruction, which is corrected by another instruction given, is cured.

WORTHINGTON, COCHRAN & BROWNING for appellant.

DINKLE & PRITCHARD for appellees.
No briefs in the record.

OPINION OF THE COURT BY JUDGE SETTLE—Affirming.

This is an appeal from a judgment of the Boyd circuit court, entered upon a verdict against the appellant, Chesapeake & Ohio Railway Co., in favor of the infant appellee, Wardie L. Patrick, for $2,000, in damages for injuries to his person from a collision with one of appellant's trains, alleged to have been caused by the negligence of its agents and servants in charge thereof. At the time of receiving his injuries appellee was 16 years of age, and the action was instituted by himself and next friend. The facts were that in December, 1905, appellee and a companion, Charles Picklesimer, a year his junior, went to the city of Ashland from their home in Magoffin county, seeking employment. After a few days' search they found work at the mill of the Herman Lumber Company. On account of a sleet and snow that fell, they were denied work one day at the mill, and upon again going to the mill in the afternoon, about 1 o'clock, they were advised that there would be no work for them there that day. After stopping for a while on Twenty-Seventh street, where a school building was being erected, they started to return to the house at which they were boarding on Thirty-Second street, going up what is known as Railroad alley, the usual and nearest route. On Railroad alley, which is a public street of Ashland, appellant has a double track, called the east-bound and west-bound tracks. The former, lying next to the hill, is used by appellant's trains running to Huntington, W. Va., and other points east, and the latter, lying next to the Ohio river, is used by its trains running to Cincinnati.

Appellee and his companion, after passing Thirty-first street, and upon reaching a point half way between that street and Thirty-Second street, saw approaching them on the west bound track a long freight train, running at considerable speed and making a loud noise. They thereupon swerved their course sufficiently to keep out of the way of the freight train on the west-bound track, and proceeded in the direction of the boarding house on Thirty-Second street to which they had started; Thirty-Second street being then about 20 feet distant. When they got to Thirty-Second street, the engine and a few cars of the freight train on the west-bound track had passed them. Upon appellee and his companion reaching Thirty-Second street, and while they were yet facing the east and in the act of turning to cross that street to get to the boarding house, a half square distant, an extra passenger train on the east-bound track, going at a high rate of speed, ran upon and against them, and dragged them under the engine tender some distance, thereby killing Picklesimer and permanently injuring appellee upon his head and other parts of the body.

Appellant complains that the trial court improperly refused to peremptorily instruct the jury to find for it. We do not understand, from the brief of its able counsel, that it is claimed the peremptory instruction should have been given on the ground that appellee was a trespasser upon its track, for, when struck by the train, he and Picklesimer were on the crossing at Thirty-Second street, but because, it is insisted, he was guilty of contributory negligence in being upon the crossing and east-bound track at the time of the collision. Upon the facts furnished by appellee's testimony, the court could not, as a matter of law,

hold that he was guilty of contributory negligence.
Even before reaching the crossing at Thirty-Second
street, he and his companion were walking along Rail-
road alley, a street or public way of the city, in con-
stant use by its inhabitants, and when they got to
Thirty-Second street, and on the crossing, they had,
according to appellee's testimony, to stop until the
freight train on the west-bound track passed them
and the crossing to enable them cross the west-bound
track to get to the boarding house. They had barely
stopped, and were in the act of turning toward the
freight train, but without having gotten their faces
in line to see the approaching passenger train, when
it struck them.

Under the circumstances, the mere fact that he was
momentarily standing on the east-bound track was
not of itself such evidence of contributory negligence
on the part of appellee as would authorize the court
to take the case from the jury. Whether, in thus
situating himself, appellee exercised ordinary care for
his own safety, was a matter to be determined by the
jury. In view of the noise made by the freight train,
to which his attention was particularly directed, be-
cause it was passing between him and the house to
which he was going, and of the fact that the passenger
train was an extra train, and, therefore, not expected,
and the further fact that it was running, according
to the testimony of three witnesses near by, at from
20 to 30 miles an hour without ringing its bell or giv-
ing other signal of its approach, it is not difficult to
understand why the jury reached the conclusion that
in the matter of receiving his injuries appellee was
not guilty of such negligence as should defeat a re-
covery.

We do not overlook the fact that appellant's train crew, and other witnesses introduced in its behalf, furnished much evidence conducing to prove contributory negligence on the part of appellee, that he suddenly and unexpectedly to the engineer and fireman of the passenger train got upon the track in front of it, that the train was running at a moderate and reasonable rate of speed when the accident occurred, and that its approach was signaled by the usual and constant ringing of the bell; but, however contradictory this evidence may have been of appellee's, it all, with his, went to the jury, and we have no right to say that they should have given it more weight than appellee's was entitled to receive, or to direct that the verdict be set aside because they gave appellee and his witnesses the greater credence.   Although repeatedly urged to do so, this court has never given its approval to the doctrine that one having a right to cross or go upon a railroad track shall, before doing so, stop, look, or listen, to discover whether a train is approaching or is so near at hand as to make it unsafe to himself to do so; for, as said in Ramsey v. Louisville, Cincinnati & Lexington Railway, 89 Ky. 104, 20 S. W. 163, 12 Ky. Law Rep. 559:

"It would be unreasonable to require of persons passing daily on foot or in vehicles along a public street in a populous, busy city or town, to stop at a railroad crossing in order to listen or look up and down a track, sometimes visible but a short distance, to ascertain whether a train is approaching, when they can without doing so have comparative security against inconvenience and injury by a reduction of the speed of trains, and easily and certainly warned of its approach by the bell or whistle." L. & N. R. R. Co. v. Lucas, 98 S. W. 308, 30 Ky. Law Rep. 359; Ky.

Central Ry. Co. v. Smith, 93 Ky. 449, 20 S. W. 392, 14 Ky. Law Rep. 455, 18 L. R. A. 63; L. & N. R. R. Co. v. Price's Adm'r, 76 S. W. 836, 25 Ky. Law Rep. 1033. We do not mean to be understood as holding that one, in crossing or going upon a railroad track, where he is entitled to go or be, should neglect the use of his faculties or fail to exercise any reasonable precaution that would enable a person of ordinary prudence under the circumstances to discover the approach or presence of a moving train and thereby prevent injury to his person, but simply to declare that he need not stop to look or listen before thus venturing, in order to discover whether a train is approaching.

The instructions of the circuit court gave to the jury the law applicable to the facts of this case, and were as follows:

"The court instructs the jury that it was the duty of the agents in charge of defendant's passenger train to use ordinary care to prevent collision with and injury to persons traveling the street where it intersects with defendant's railroad track by keeping a lookout in approaching said crossing, and in giving reasonably sufficient signals by ringing the engine bell to warn travelers of the approach of the train, and by running at such a rate of speed as was reasonably consistent with the safety of persons traveling the street. And if the jury believe from the evidence that on the occasion in controversy the defendant's agents in charge of its train failed in the performance of any or all of these duties, and by reason of such failure the collision occurred, then the jury should find for the plaintiff, unless they believe from the evidence the plaintiff failed to exercise ordinary care for his own safety."

No. 2: "The court instructs the jury, that it was the duty of the plaintiff, Wardie Patrick, on approaching the crossing mentioned in the evidence, to use such care as would be usually expected of an ordinarily prudent person to learn of the approach of the train and keep out of its way; and if he failed to exercise such care, and but for such failure would not have been injured, then the law is for the defendant and the jury should so find, even though they may believe from the evidence that the agents of defendant in charge of its train were negligent, as set out in instruction No. 1."

No. 3: "The court instructs the jury that if they believe from the evidence that, at the time and place of his injury, the plaintiff, Wardie Patrick, was not upon or traveling the Thirty-Second street crossing, but was walking upon defendant's tracks east of said crossing, then the law is for defendant, and the jury will so find." ·

No. 4: "If the jury find for the plaintiff under instruction No. 1, they will allow him such reasonable sum in damages as they may believe from the evidence will fairly compensate him for any suffering, mental or physical, which he has suffered as the direct result of said injury, and for any suffering they may believe from the evidence it is reasonably certain he will experience in the future as the direct result of said injury, and for all permanent reduction, if any of his power to earn money in the future as the direct result of said injury, not exceeding in the aggregate the sum of $2,000, the amount claimed in the petition."

No. 5: "Ordinary care is that degree of care which ordinarily prudent persons are expected to use under similar circumstances. Negligence is the failure to use ordinary care."

No. 6: "Nine or more of the jury concurring may return a verdict; but, if it is made by a less number than the entire jury, it must be signed by all the jurors thereto."

We do not think the instructions open to the objections made to them by appellant's counsel. It was not error for instruction No. 1 to confine the signals of the approach of the train by which appellee was injured to the ringing of the bell; for, according to appellant's evidence, no sounding of the engine whistle that could have been heard by appellee was done until the engine was within a few feet of, and in fact, upon him, which was too late to give notice of the coming of the train. Besides, nearly all of appellant's servants in charge of the passenger train testified that the bell rang as the train approached, and for a long distance before it struck, appellee. We fail to see that appellant was prejudiced by the instruction. The second objection to instruction No. 1 was removed by instruction 3, which in substance advised the jury that there could be no recovery unless appellee was upon the Thirty-Second street crossing when struck by the train. Instruction 2 could have been in no sense misleading or prejudicial, as the evidence showed that appellee was struck by the train upon reaching the Thirty-Second street crossing and as he was in the act of turning to cross the west-bound railroad track.

We have found no error in the admission or exclusion of evidence; and as, on the whole record, no reason has been shown for disturbing the verdict, the judgment is affirmed.